### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| JULIE J. MCMAHON (f/k/a/ Julie Floe), INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | ) ) ) ) |
| *Plaintiff*, | ) ) ) |
| v. | ) Case No.: ) |
| NAVIENT CORPORATION, NAVIENT SOLUTIONS, INC., NAVIENT CREDIT FINANCE CORP., DELTA MANAGEMENT ASSOCIATES, INC., RAUSCH, STURM, ISRAEL, ENERSON & HORNIK, LLC, DOE DEFENDANTS 1-10, | ) Judge: ) ) Magistrate: ) ) ) ) ) |
| *Defendants*. | ) **JURY TRIAL DEMANDED** ) ) |

### CLASS ACTION COMPLAINT

Plaintiff Julie J. McMahon ("Plaintiff"), by and through undersigned counsel, on her own behalf and on behalf of all others similarly situated, upon personal knowledge as to herself and her own acts, and upon information and belief as to all other matters, brings this action against Defendants Navient Corporation, Navient Solutions, Inc., Navient Credit Finance Corporation, Delta Management Associates, Inc., Rausch, Sturm, Israel, Enerson & Hornik, LLC, and Doe Defendants 1-10 (collectively "Defendants") and alleges as follows:

### NATURE OF THE ACTION

1. This class action seeks redress for a series of wrongful collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* (the "FDCPA") and are otherwise unlawful, as set forth below.

## JURISDICTION AND VENUE

2.   This Court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337.

3.   Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendants conduct business in the District of Minnesota and a substantial portion of the events or omissions giving rise to the claims occurred within the District of Minnesota. This Court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

4.   Plaintiff Julie J. McMahon is an individual citizen of the State of Minnesota.

5.   Plaintiff is a "consumer" as defined by 15 U.S.C. §1692a(3) of the FDCPA.

6.   Defendant Delta Management Associates, Inc. states that it "provides comprehensive, strategic collection and portfolio management solutions."[1] With a headquarters located at 100 Everett Avenue, Suite 6, Chelsea, Massachusetts, Defendant is in the business of collecting consumer debts for others throughout the country, including in Minnesota. Defendant may be served in this state through its registered agent National Corporate Research Ltd at 6040 Earle Brown Drive, #480 Brooklyn Center, Minnesota 55430.

7.   Defendant Delta Management Associates, Inc. is a "debt collector" as defined by § 1692a(6) of the FDCPA.

---

[1] http://www.deltamanagementassociates.com/

8. Defendant Rausch, Sturm, Israel, Enerson & Hornik, LLC, is a Wisconsin Limited Liability Company with a principal place of business at 250 N. Sunnyslope Road #300, Brookfield, WI 53005. Service may be effectuated on this Defendant at its registered office address, 3209 West 76th Street, Suite 301, Minneapolis, Minnesota 55435.

9. Rausch holds itself out as "the firm for Navient Credit Finance Corporation" and indicated a principle-agent relationship to Plaintiff by indicating it had "authorization to settle your account for a discounted amount…" and "[b]elow are two settlement options that we can offer on our client's behalf." Rausch is an agent of Navient making Navient liable for its agents unlawful acts.

10. Defendant Delta Management Associates, Inc. is a "debt collector" as defined by § 1692a(6) of the FDCPA.

11. Formerly known as Sallie Mae, Inc., defendant Navient Solutions, Inc., a wholly-owned subsidiary of Navient Corporation, is a corporation organized under the laws of the State of Delaware, and having its principal place of business at 300 Continental Drive, Newark, Delaware 19713. Navient Solutions, Inc. principally engages in servicing of federal and private student loans for more than 12 million borrowers.

12. Defendant Navient Corporation is a loan management, servicing, and asset recovery company organized under the laws of the State of Delaware, and having its principal place of business at 123 Justison Street, Wilmington, Delaware 19801. Navient Corporation is the direct or indirect owner of all of the stock of Navient Solutions, Inc.

13. There has been significant overlap between the corporate governance and management of Navient Corporation and Navient Solutions, Inc. Specifically, many of the directors and officers of Navient Solutions, Inc. have also been directors or officers of Navient Corporation. For example, as of 2014, John Remondi served as President and Chief Executive Officer for both

Navient Corporation and Navient Solutions, Inc.; John Kane served as Chief Operating Officer for both Navient Corporation and Navient Solutions, Inc.; Somsak Chivavibul served as Chief Financial Officer for both Navient Corporation and Navient Solutions, Inc.; Timothy Hynes served as Chief Risk Officer for both Navient Corporation and Navient Solutions, Inc.; and Stephen O'Connell served as Senior Vice President and Treasurer for both Navient Corporation and Navient Solutions, Inc.

14. Following a corporate reorganization in 2014, Navient Corporation was the successor to SLM Corporation and Navient, LLC. As part of this reorganization, Navient Corporation assumed certain liabilities related to the servicing and collection activities of SLM Corporation, Navient, LLC, and their subsidiaries. Among the liabilities assumed by Navient Corporation are all of the pre-reorganization servicing conduct described in this Complaint.

15. Defendant Navient Credit Finance Corporation is a Delaware corporation with a principal place of business at . Service may be effectuated on this Defendant through its registered agent, Corporation Service Company at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808. Navient Credit Finance Corporation is a subsidiary of Navient Corporation.

16. For all intents and purposes, Navient is the new name for Sallie Mae.

17. A principal-agent relationship exists between Navient Corporation, Navient Solutions, Inc., and Navient Credit Finance Corporation. Navient Corporation is the principal of all other related entities.

18. Navient Corporation is liable for the wrongful acts of its subsidiary-agents, including Navient Solutions, Inc. and Navient Credit Finance Corporation (collectively "Navient").

19. Alternatively or additionally, the acts of the Defendants were conducted in concert pursuant to an express or implied agreement amongst themselves to act in this collective manner. All Defendants are therefore jointly and severally liable for the acts complained of herein.

20. Doe Defendants 1-10 are defendants that may be discovered as discovery in this matter is performed.

21. Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

## FACTS

22. Beginning on or about June 2007, Plaintiff registered for digital photography classes with Sanford-Brown College.

23. To pay for this schooling, Plaintiff took out student loans.

24. Plaintiff took out approximately $18,225.00 in student loans.

25. These loans were disbursed by the Department of Education, and were assigned to Sallie Mae for servicing.

26. After paying on the student loans for a period of time, Plaintiff became unable to pay her student loans.

27. Plaintiff was a debtor with federal student loans that were placed into default status.

28. Upon default, on or about July 30, 2010, United Student Aid Funds, Inc. purchased the loans.

29. The Plaintiff's federal student loans were "debts" as that term is defined by the FDCPA.

30. On or about February 5, 2015, Plaintiff received a letter from Van Ru Credit Corporation ("Van Ru"). Pl.'s Ex. 1.

31. The February 5, 2015 letter was sent on behalf of creditor "United Student Aid Funds Inc." as an attempt to collect an alleged student loan debt on behalf of Sallie Mae Education Trust.

32. On or about March 3, 2015, Plaintiff received a letter from Rausch, Sturm, Israel, Enerson & Hornik, LLC ("Rausch") attempting to collect an alleged student loan debt on behalf of Navient Credit Finance Corporation. The letter stated that Rausch had "authorization to settle your account for the discounted amount of $8,419.75 in two payments: your first payment of $4,209.88 is to be received in our office by 2015-03-26. Your second payment of $4,209.87 is to be received in our office by 2015-04-24." Pl.'s Ex. 2.

33. On or about March 18, 2015, Plaintiff accepted the above referenced offer and remitted a check to Navient Credit Finance in the amount of $8,419.75. Pl.'s Ex. 3. The check copy provided through Wells Fargo's online portal reflects that the check was endorsed by "ICL Sallie Mae."

34. On or about March 20, 2015, Plaintiff received a letter from Rausch confirming receipt of her March 18, 2015 check in the amount of $8,419.75. The letter further stated in capital letters, "YOUR ACCOUNT HAS BEEN SETTLED." Pl.'s Ex. 4.

35. On May 11, 2016, Plaintiff accessed her Navient online account. Her online account reflected that all three of her student loans were "PAID IN FULL" Pl.'s Group Ex. 5.

36. On or about June 9, 2016, Plaintiff received a letter from United Student Aid Funds, Inc. ("USA Funds") which provided notice that USA Funds was going to proceed with wage withholding if Plaintiff did not set up a repayment agreement with Delta Management Associates, Inc. ("Delta") by July 9, 2016. Pl.'s Ex. 6.

37. Upon information and belief, Rausch misrepresented the nature and legal status of Plaintiff's student loan debt, in May or early June 2016, shortly before renewed collection attempts by Delta commenced. Upon information and belief, Rausch's misrepresentation of the legal status of the debt (failing to report that the debt was settled), has led to wrongful continued attempts at collection of the debt, including, now, wrongful wage garnishment.

38. The alleged defaulted loans were held by USA Funds and assigned to Delta for collection purposes.

39. On or about June 14, 2016, Plaintiff received another letter from Delta which informed Plaintiff that Delta had proceeded with administrative wage garnishment enforcement whereby her employer was ordered by USA Funds to withhold from her and remit a sum of up to 15% of her disposable income.

40. On or about July 6, 2016, Plaintiff sent Delta a facsimile which included all of the documentation necessary to demonstrate that the alleged debt had been paid in full and was satisfied. Pl.'s Ex. 7.

41. Under 34 CFR §34.5, before initiating wage garnishment of student loans, Delta is required to send a notice of proposed garnishment, said notice to include an explanation of the debtor's rights, including, but not limited to, those rights found at 34 CFR §34.6.

42. Under 34 CFR §34.6, a debtor has the right to inspect and copy records related to the debt, and to enter into a written repayment agreement. However, a debtor also has a right to object to the wage deduction and demand a hearing on said objection.

43. Therefore, Plaintiff requested a telephonic administrative hearing pursuant to 20 U.S.C. § 1095a.

44. Plaintiff stated her reasons for requesting the hearing, which included a) Plaintiff does not owe the full amount shown because Plaintiff repaid some of the loan in entirety and b) Plaintiff believes that this loan(s) is not enforceable debt in the amount stated.

45. The telephonic administrative hearing was held on October 27, 2016 at 11:00 a.m. Eastern Standard Time.

46. Despite Plaintiff providing clear evidence that she had fully settled and satisfied the alleged debt – including an offer letter from Rausch, a copy of the payment via check with was endorsed by "ICL Sallie Mae," a confirmation of payment from Rausch which assured Plaintiff that, pursuant to the contract, "YOUR ACCOUNT HAS BEEN SETTLED," and account statements from Navient showing the status of Plaintiff's loans as "PAID IN FULL" – the hearing officer, Sonita R. Talbert of Educational Credit Management Coporation ("ECMC"), approved Delta's fifteen percent (15%) administrative wage garnishment of Plaintiff's disposable income. Pl.'s Ex. 8.

47. This finding, which flies in the face of the clear evidence presented by Plaintiff, who was acting *pro se* at the time, is not surprising considering the relationship between Delta Management Associates, Inc., USA Funds, Inc., and ECMC – they all work together. Delta Management Associates performs collection services for both USA Funds and ECMC.

48. Thus, upon information and belief, no matter what evidence Plaintiff would have presented (including clear settlement of her debt and accounts statements reflecting "PAID IN FULL"), the Delta, USA Funds, and ECMC trio were not going to honor Plaintiff's settlement of her claim, were going to attempt to extort more money from Plaintiff, and have now continued down the path of extortion by wrongfully garnishing Plaintiff's wages.

49. On or about December 15, 2016, Attorney Brandon Wise of the law firm PEIFFER ROSCA WOLF ABDULLAH CARR & KANE, APLC sent Delta Management Associates, Inc. a letter of representation informing Delta that the firm represented Plaintiff in connection with this matter. Pl.'s Ex. 9.

50. The December 15, 2016 letter went on to request that Delta cease and desist from any wage garnishment procedure or proceedings and that Delta send a letter confirming the debt that they had wrongfully alleged is owed was in fact settled and is no longer due and owing.

51. Delta did not respond to this correspondence and continues to wrongfully garnish Plaintiff's wages.

52. To date, Defendant has knowingly, wrongfully garnished over $1416.49 from Plaintiff since January 2017.

53. The above referenced amounts have been wrongfully and illegally garnished as USA Funds and Navient have been involved with these loans since 2010, including when the alleged debt in question has been settled in full. See, Pl.'s Exs. 4, 5, and 6.

## CLASS ALLEGATIONS

54. Plaintiff brings this action on behalf of a the classes defined as follows:

**Delta FDCPA Class:**
All individuals who reside in the United States, who since April 3, 2016, were subjected to Delta's unfair and deceptive debt collection practices, as alleged below, which violates the FDCPA, and who suffered damages therefrom.

**Rausch FDCPA Class:**
All individuals who reside in the United States, who since April 3, 2016, were subjected to Rausch's unfair and deceptive debt collection practices, as alleged below, which violates the FDCPA, and who suffered damages therefrom.

**Breach of Contract Class:**
All individuals who reside in the United States, who since April 3, 2011, were made an offer by Navient to settle their student loan debt, accepted the offer, and have suffered damages due to the debt not being settled.

**Unjust Enrichment Class:**
All individuals who reside in the United States, who since April 3, 2011, have paid money to Navient after Navient's unjust and inequitable conduct, including falsely offering to settle outstanding student loan debt, to receive an economic benefit from the individuals.

55. Specifically excluded from the Delta FDCPA Class, the Rausch FDCPA Class, the Breach of Contract Class, and the Unjust Enrichment Class (collectively the "Classes") are: (a) any officers, directors, or employees of Defendants, or any of their subsidiaries; (b) any judge assigned to hear this case (or spouse or family member of any assigned judge); (c) any employee of the Court; and (d) any juror selected to serve this case.

56. Further, as discovery unfolds, additional classes or modified classes might be possible or necessary. However, as Defendants' acts are potentially widespread and are violative of a federal statute, use of a nationwide class is best-suited for this action and places Defendants on notice of the broadest possible class that Plaintiff could move for, as contemplated by the Federal Rules' notice-pleading standard.

57. The members of the Classes are ascertainable from objective criteria.

58. If necessary to preserve the case as a class action, the Court itself can redefine the Classes, create additional subclasses, or both.

59. The requirements of Rule 23(a) are satisfied as the members of the Classes are so numerous and geographically dispersed that joinder is impracticable. On information and belief, there are more than 50 members for each Class.

60. The commonality requirement of Rule 23(a)(2) is satisfied because there are questions of law or fact common to Plaintiff and the other members of the proposed Classes. Among those common questions of law or fact are:

      a. whether Defendants have a common policy and practice of attempting to collect on settled debt;

    b. whether Defendants have a common policy and practice using unfair practices in attempting to collect debts;

    c. whether Defendants have a common policy and practice using unfair practices in attempting to garnish wages; and

    d. whether Defendants violated the FDCPA

    e. whether Defendants made offers to settle debts;

    f. whether members of the Classes accepted offers to settle debts;

    g. whether the Class members debts were actually settled by Defendants; and

    h. whether or not members of the Classes are damaged by Defendants unlawful act.

61. Plaintiff's claims are typical of the claims of the proposed Classes that she seeks to represent, as described above, because they arise from the same course of conduct by Defendants and are based on the same legal theories. Further, Plaintiff seeks the same form of relief for herself and the proposed Classes. Therefore, the "typicality" requirement of Rule 23(a)(3) is satisfied.

62. Because her claims are typical of the proposed Classes that Plaintiff seeks to represent, Plaintiff has every incentive to pursue those claims vigorously. Plaintiff has no conflicts with, or interests antagonistic to the proposed Classes. Plaintiff, a victim of unscrupulous student loan servicing and general business practices, is committed to the vigorous prosecution of this action, which is reflected in her retention of competent counsel experienced in complex and challenging litigation.

63. Plaintiff's counsel satisfies the requirements of Rule 23(g) to serve as counsel for the proposed Class. Plaintiff's counsel (a) has identified and thoroughly investigated the claims set forth herein; (b) has previously been lead counsel in class action litigation; (c) has been involved in complex class litigation; (d) has extensive knowledge of the applicable law; and (d) has the resources to commit to the vigorous prosecution of this action on behalf of the proposed Class. Accordingly, Plaintiff satisfies the adequacy of representation requirements of Rule 23(a)(4).

64. In addition, this action meets the requirements of Rule 23(b)(2). Defendants have acted or refused to act on grounds generally applicable to Plaintiff and others similarly situated, making final injunctive or corresponding declaratory relief with respect to the proposed Classes appropriate.

65. This action also meets the requirements of Rule 23(b)(3). Common questions of law or fact, including those set forth above, exist as to the claims of all members of the proposed Class and predominate over questions affecting only individual Class members, and a class action is superior – if not the only method – for the fair and efficient adjudication of this controversy.

66. Class treatment will permit large numbers of similarly situated student loan borrowers to prosecute their respective claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would produce.

67. This action is manageable as a class action. Notice may be provided to members of the proposed Class by first-class mail and through the alternative means, including electronic mail (email), internet postings including banner ads, distribution through social media, including sponsored postings on Facebook and Twitter, and by publication. Thus, the superiority and manageability requirements of Rule 23(b)(3) are satisfied.

**COUNT I – VIOLATION OF THE FDCPA**
**ON BEHALF OF THE NATIONWIDE CLASS AGAINST DEFENDANT DELTA MANAGEMENT ASSOCIATES, INC.**

68. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

69. 15 U.S.C. § 1692e(2)(A) states, "a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without

limiting the general application of the foregoing, the following conduct is a violation of this section: the false representation of – the character, amount, or legal status of any debt."

70.   15 U.S.C. §1692e(5) states, "a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: the threat to take any action that cannot legally be taken…"

71.   15 U.S.C. § 1692e(10) states, "a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: the use of any false representation or deceptive means to collect or attempt to collect any debt…"

72.   Delta made false misrepresentations to Plaintiff about the character, amount, and legal status of the alleged debt.

73.   Delta informed Plaintiff that she owed an alleged debt that had actually already been fully settled, paid, and satisfied in full.

74.   Plaintiff provided Delta with detailed proof that the alleged debt had been fully settled, paid, and satisfied in full.

75.   Delta threatened, and in fact took, legal action that it could not legally take.

76.   At the time of filing this lawsuit, Delta continues to illegally conduct an administrative wage garnishment of fifteen percent (15%) of Plaintiff's disposable income.

77.   Delta used false representations and deceptive means in its attempt to collect the alleged debt.

78.   Delta informed Plaintiff that she owed an alleged debt that had actually already been fully settled, paid, and satisfied in full.

79. Delta has violated 15 U.S.C. §§ 1692e(2)(A), 1692e(5), and 1692e(10).

80. Delta is therefore liable for statutory fees, penalties, and Plaintiff's reasonable attorneys' fees and costs.

### COUNT II – IN THE ALTERNATIVE, VIOLATION OF THE FDCPA ON BEHALF OF THE NATIONWIDE CLASS AGAINST DEFENDANT RAUSCH

81. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

82. Plaintiff received a letter on March 3, 2015 from Rausch offering to settle Plaintiff's student loan debt on certain terms.

83. Plaintiff accepted the terms offered by Rausch, paying $8,419.75 to fully settle her student loan debt.

84. Plaintiff's check was accepted and cashed, with the endorsement "ICL Sallie Mae."

85. Rausch sent Plaintiff a letter confirming receipt of payment and further stating, in all capital letters, "YOUR ACCOUNT HAS BEEN SETTLED."

86. Rausch falsely represented the legal status of Plaintiff's debt.

87. Rausch represented to Plaintiff that it could settle her debt on certain payment terms.

88. Rausch represented to Plaintiff that "YOUR ACCOUNT HAS BEEN SETTLED."

89. As Plaintiff's debt continues to be collected on, now through administrative garnishment, Rausch falsely represented the character and legal status of Plaintiff's debt, in violation of the FDCPA, and Rausch used unfair and unconscionable means in its attempt to collect, and actual collection of $8,419.75, in violation of the FDCPA.

90. Rausch is therefore liable for statutory fees, penalties, and Plaintiff's reasonable attorneys' fees and costs.

### COUNT III – BREACH OF CONTRACT
### PLAINTIFF V. RAUSCH AND NAVIENT

91. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

92. Rausch held itself out as "the firm for Navient Credit Finance Corporation" to Plaintiff.

93. Rausch was authorized by Navient to make an offer to settle Plaintiff's student loan debt to Plaintiff.

94. Rausch made Plaintiff the offer that was authorized by Navient.

95. Plaintiff received a letter on March 3, 2015 from Rausch offering to settle Plaintiff's student loan debt on certain terms.

96. Plaintiff accepted the offer made by Navient, through Rausch.

97. On March 18, 2015, Plaintiff accepted the terms offered by Navient, through Rausch, paying $8,419.75 to "Navient Credit Finance" to fully settle her student loan debt.

98. Plaintiff's check was accepted and cashed, with the endorsement "ICL Sallie Mae."

99. Navient, through the efforts of its agent Rausch, received the consideration contemplated by the terms of the contract.

100. On March 20, 2015, Rausch sent Plaintiff a letter confirming receipt of payment and further stating, in all capital letters, "YOUR ACCOUNT HAS BEEN SETTLED."

101. However, Plaintiff's debt was apparently not settled by Navient and Rausch, as it continues to be collected on, including being sold or assigned to a different debt collector – Delta – who has now pursued garnishment on the settled debt.

102. Navient and Rausch have therefore breached the contract with Plaintiff.

103. Plaintiff has and continues to suffer damages proximately caused by Navient and Rausch's breach of contract.

### COUNT IV – UNJUST ENRICHMENT
### PLAINTIFF V. RAUSCH AND NAVIENT

104. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

105. Navient and Rausch received a monetary benefit from Plaintiff.

106. Navient received payment of $8,419.75.

107. Upon information and belief Rausch received some payment for its efforts in corresponding with and obtaining payment from Plaintiff.

108. Navient and Rausch were not entitled to their respective monetary benefits derived from Plaintiff's payment of $8,419.75.

109. Navient and Rausch obtained this payment by representing that such a payment would settle all of Plaintiff's outstanding student loan debt.

110. Allowing Navient and Rausch to retain monies paid by Plaintiff is unjust and inequitable as Plaintiff's student loan debt was apparently not settled by Navient and Rausch.

111. Navient and Rausch therefore cannot in equity and good conscience be allowed to retain the economic benefit conferred by Plaintiff, as the benefit was gained through an improper manner, including a statement that Plaintiff's student loans would be settled upon payment of the $8,419.75.

112. Plaintiff has suffered damages proximately caused by Navient and Rausch's acts, and it would be inequitable for Navient and Rausch to be allowed to retain any benefit due to their use of unjust and inequitable means to obtain the pay economic benefit discussed above.

113. Further, Navient and Rausch should be ordered to disgorge any gains or benefits obtained at the expense or detriment of Plaintiff.

## JURY DEMAND

114. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants

- A. An Order certifying this matter as a class action pursuant to FED. R. CIV. P. 23;
- B. Entry of judgment finding Defendants violated the law as set forth above,
- C. Monetary and statutory damages to which Plaintiff and others similarly situated are entitled and will be entitled to at the time of trial;
- D. Pre- and post-judgment interest;
- E. The costs of this action;
- F. Reasonable attorneys' fees; and
- G. Such other and further relief as the Court deems proper.

Dated: April 4, 2017          Respectfully submitted,

By: */s/ Garrett D. Blanchfield, Jr.*
Garrett D. Balnchfield, Jr. (#209855)
Roberta A. Yard (#322295)
REINHARDT WENDORF BLANCHFIELD
E-1250 First National Bank Building
332 Minnesota Street
St. Paul, MN 55101
Ph: 651-287-2100
Fax: 651-287-2103
Email: g.blanchfield@rwblawfirm.com
Email: r.yard@rwblawfirm.com

Brandon M. Wise – (*pro hav vice* forthcoming)
PEIFFER ROSCA WOLF
ABDULLAH CARR & KANE, APLC
818 Lafayette Ave., Floor 2
St. Louis, MO 63104

Ph: 314-833-4825
Email: bwise@prwlegal.com

Joel Halvorsen – (*pro hav vice* forthcoming)
THE HALVORSEN LAW FIRM
12 Moss Pointe Court
St. Charles, Missouri 63303
Ph: 314-325-4292
Fax: 314-787-4323
Email: joel@halvorsenlawfirm.com

COUNSEL FOR PLAINTIFF AND THE CLASSES